### Robert Burrell v. The State.

No. 3426.          Decided November 9, 1906.

**Burglary—Explanation of Defendant—Insufficiency of Evidence.**

Where upon trial for burglary the defendant stated, when asked to explain, that he was drunk and went to sleep in the house alleged to have been burglarized, and such explanation was not in any material point controverted by the State's testimony, the same was insufficient to sustain a verdict of conviction.

Appeal from the District Court of Houston. Tried below before the Hon. Ben H. Gradner.

Appeal from a conviction of burglary of a store at night; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Madden,* for appellant.—Buntain v. State, 15 Texas Crim. App., 492; Zollicoffer, 16 Texas Crim. App., 312; Ross v. State, id., 554; Neiderluck v. State, 23 Texas Crim. App., 38.

*J. E. Yantis,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Two years in the penitentiary was fixed as punishment of appellant on conviction for burglary. The only question we deem necessary to review is the sufficiency of the evidence. We copy from appellant's brief, the following, which is a substantial statement of the facts adduced, to wit: "G. L. Moore had control of a building in Crockett, which he used as a drugstore and in which he

did a drug business. Appellant was employed by Moore at that time, and his duties were 'those of a porter,' to 'mail letters and sweep out the store, and clean up the stock, and such as that.' About 6 o'clock in the afternoon of the day of the alleged burglary that night, Moore left his store to go to supper, leaving appellant and Edgar Satterwhite, his clerk, at the store. About 7 o'clock, Moore returned to his store and was told by Satterwhite that appellant had gone. It was then dark. About 9 o'clock, Moore and Satterwhite closed the store and went to the skating rink. Shortly afterward, Moore was approached by some one and was told that some one was in his store 'with a light.' He returned to the store as quick as he could. On arriving there, he saw a 'dim light' burning, and saw it through the 'front window.' Getting some one to go with him, Moore and his companion went to the 'back of the store,' when Moore climbed up on the wall. His companion warned him that some one might shoot him, and telling his companion to remain there, Moore went back to the 'front of the store.' On reaching the front, 'the crowd opened the door and turned on the light.' The back door was open and they went into the back yard and found appellant there. Moore then asked appellant 'what he meant,' and he answered, in substance, 'I was back there asleep and you had locked up the house, and it was dark, and I had started to go out at the back door. I had drank some alcohol and it 'threw' me, and I went back in the side room and went to sleep, and did not wake up until after you had closed the store. I got out at the back door and started to climb over the back fence and heard some one there, and hid in a corner. I thought it was some one trying to get in.' The safe door in the house was open and a lot of matches had been struck. The matches were lying down by the door of the safe. The safe was not locked. It was just pushed to, and the combination not turned. The drawers had not been opened. A piece of enamel was found lying on the safe as if some one had battered on the outside, or on the inside on the little lock of the money drawer. The next day a fresh cut was discovered in the keyhole of the drawer. There were two extra keys to the front door of the store, kept in the drawer of Moore's desk. Only one of them was there that night, but both were there the next morning. Moore and Satterwhite closed the store that night. Moore bolted the doors (evidently the back doors, on the inside) and closed the window, but did not go into the back room, to see if anybody was there. To close the back door, Moore had to go down the back hallway, to get to the door, and saw no one there. Appellant had no authority to enter the store when it was closed, and was allowed to enter only when it was open for business. He did not carry the keys. If he had ever carried the key to the house Moore did not know it. Moore looked for the keys that night after the alleged burglary, and after appellant had gone. They were kept in the pen compartment of Moore's desk, which was a little sliding drawer. The desk was away back in the back part of the office in the back part of the store. When

Moore got to the store the next morning, appellant was there. When Moore went to the back of the store, appellant also came back and sat down by the stove. Moore called both appellant's and Satterwhite's attention to the key, and asked appellant if he knew the key, and he said 'no.' Moore says, 'If the defendant entered my store that night, it was without my consent.' "

We do not think the evidence supports the verdict of-the jury. The explanation of appellant is not in any material point controverted by the State's testimony. If he was drunk and went to sleep in the house, as he testified, then he should not have been guilty of burglary under the facts above stated. There is no such contravention of this statement, on his part as would authorize this court to permit the verdict to stand.

Because the evidence is not sufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*